Fannie Mae Loan No:

# LOST NOTE AFFIDAVIT
### (WITH INDEMNIFICATION AGREEMENT)

I, William J. Sachelari, being duly sworn, do hereby state under oath that:

1. As Vice President of The Bank of New York Mellon Trust Company, N.A., I have independent knowledge of facts set forth in this Affidavit, and I have the power and authority to grant the indemnification set forth herein on behalf of The Bank of New York Mellon Trust Company, N.A. (the "**Custodian**").

2, Fannie Mae acquired the related mortgage loan and became the owner of the following described mortgage note (the "**Note**"):

| | |
|---|---|
| Date of Note: | 1/24/2008 |
| Loan No.: | |
| Borrower(s): | MORNEAULT |
| Original Payee: | First Horizon Home Loans, A Division of First Tennessee Bank, N.A. |
| Original Loan Amount: | 106000 |
| Rate of Interest (initial rate if ARM): | |
| Address of Mortgage Property: | 412 ESSEX ST BANGOR, ME 04401 |

3. The Custodian holds possession of the Note on behalf of Fannie Mae. The Note was submitted to Custodian in connection with one of the following:
    wwwwwwwwwwwwwwwww)   the sale of the related mortgage loan to Fannie Mae, in which case Custodian examined and certified the Note and took possession of the Note on behalf of Fannie Mae pursuant to a Designated Custodian Master Custodial Agreement (a "**Designated Custodian Master Custodial Agreement**") among Fannie Mae, the Custodian and the related lender;
    xxxxxxxxxxxxxxxxxx)   the subsequent transfer of the custody of the Note to Custodian from Fannie Mae's Document Delivery Facility, in which case, Custodian examined the Note, acknowledged to Fannie Mae its receipt of an original mortgage note, and took possession of the Note on behalf of Fannie Mae pursuant to a Designated Custodian Master Custodial Agreement;
    yyyyyyyyyyyyyyyyyy)   the transfer of the custody of the Note to Custodian in connection with a transfer of the servicing of the related mortgage loan, in which case the Custodian examined the Note and certified to the transferee servicer its receipt of an original mortgage note and took possession of the Note on behalf of Fannie Mae pursuant to a Designated Custodian Master Custodial Agreement; or
    zzzzzzzzzzzzzzzzzz)   the transfer of custody of the Note to Custodian pursuant to the terms of the Master Custodial Agreement for Custody of Single-Family MSR Acquisition Mortgage Loans between Fannie Mae and the Custodian, dated January 20, 2012 (the "**MSR Custodial Agreement**"), in which case Custodian examined the Note, acknowledged to Fannie Mae its receipt of an original mortgage note and took possession of the Note on behalf of Fannie Mae.

**EXHIBIT B**

[1353258v4]

4. Custodian has not sold, cancelled, altered, assigned or hypothecated the Note to which this Affidavit relates.

5. The original Note appears to have been lost, mislaid or misfiled, and the Custodian is unable to locate the original Note.

6. The original Note has not been located after a thorough and diligent search by the Custodian.

7. The loss of possession of the original Note was not the result of a transfer or a lawful seizure.

8. A true, correct and complete copy of the original Note is attached hereto, including all required signatures and endorsements complete to the lender that sold the related mortgage loan to Fannie Mae and an endorsement by such lender in blank, which is secured by a mortgage, deed of trust, or other security instrument.

9. Custodian agrees that the provisions of Section 10(a) of the related Designated Custodian Master Custodial Agreement or the provisions of Section 10(b) of the MSR Custodial Agreement, as applicable, shall be applicable to any and all liabilities, obligations, losses, damages, payments, costs or expenses of any kind whatsoever which may be imposed on, incurred by, or asserted against Fannie Mae as the result of Custodian's inability to locate the original Note.

10. Fannie Mae, its successors, and assigns will rely on this Affidavit.

EXECUTED THIS __9__ DAY OF __March__, 2017.

Signature: _William J. Sachelari_
Name:      William J. Sachelari
Title:     Vice President

On this __9__ day of March, 2017, before me appeared William J. Sachelari, to me personally known, who being duly sworn did say that he is the Vice President of The Bank of New York Mellon Trust Company, N.A., and that said Lost Note Affidavit was signed and sealed on behalf of such corporation and said William J. Sachelari acknowledged this instrument to be the free act and deed of said corporation.

_Maria C Perez_
Notary Public in and for the
State of Texas

My Commission Expires: __8/18/19__

MARIA CRUZ PEREZ
MY COMMISSION EXPIRES
August 18, 2019

[1353258v4]



# NOTE

January 24th, 2008          BANGOR,                    MAINE
[Date]                      [City]                    [State]

412 ESSEX STREET, BANGOR, Maine 04401

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 106,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on March 1st, 2008. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 1st, 2038, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO BOX 809
                                    MEMPHIS, TN 38101     or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 805.68.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MAINE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services
VMP ®-5N(ME) (0710)        Form 3220 1/01

Page 1 of 3        Initials: KM

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)   _____(Seal)
KEVIN M. MORNEAULT           -Borrower                                -Borrower

_____(Seal)   _____(Seal)
                             -Borrower                                -Borrower

_____(Seal)   _____(Seal)
                             -Borrower                                -Borrower

_____(Seal)   _____(Seal)
                             -Borrower                                -Borrower

*[Sign Original Only]*

VMP®-5N(ME) (0710)                    Page 3 of 3                    Form 3220 1/01

Pay to the order of

Without Recourse
First Horizon Home Loans, a division of
First Tennessee Bank N.A.

by _[signature: Belinda DeArman]_
Belinda DeArman, Senior Vice President