**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| 1900 CAPITAL TRUST II, BY US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE,<br><br>    Plaintiff<br><br> v.<br><br>KEVIN M. MORNEAULT<br><br>    Defendant,<br><br>   And<br><br>ATLANTIC CREDIT AND FINCANCE, INC., CAPTIAL ONE BANK USA, N.A., and LEE'S CONCRETE, INC.<br><br>    Parties-In-Interest | Case No. 1:24-cv-00416-LEW |
| KEVIN M. MORNEAULT<br><br>    Counterclaim Plaintiff<br><br> v.<br><br>DLJ MORTGAGE CAPTIAL, INC.<br><br>    Counterclaim Defendant | |

**MOTION AND SUPPORTINHG MEMORANDUM**
**OF DEFENDANT AND COUNTERCLAIM PLAINTIFF MORNEAULT**
**FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**
**ON THE AMENDED COMPLAINT AND HIS COUNTERCLAIMS**

Defendant Morneault moves for an order of summary judgment determining that he has

no liability to Plaintiff on Counts I through IV of the Amended Complaint (ECF 17) and granting

1

judgment in his favor for the declaratory relief prayed for by him in Counts I and II of his Amended Counterclaim (ECF 38).

## I.      Introduction.

On January 29, 2015, the Bangor District Court entered judgment for Morneault in a 2012 foreclosure action, involving the same note, same mortgage, and same alleged event of default as involved in this action commenced in 2024. The Law Court ordered the entry of that judgment when it reversed an earlier foreclosure judgment for the plaintiff in that action. The plaintiff in the 2012 action filed a motion under M.R.Civ. P. 60(b)  asking the court to vacate its judgment for Morneault and to dismiss the 2012 foreclosure action without prejudice, alleging that the Law Court's September 22, 2015, decision in *Bank of America v. Greenleaf*, 2015 ME 127, 124 A.3d 1122, compelled that result. The Bangor District Court denied that motion, thus allowing the judgment for Morneault to stand. No appeal was taken from that denial of the Rule 60(b) motion. Now the owner of the Morneault loan, relying on that same note, same mortgage, and same event of default pursues this new foreclosure action.

Morneault explains in the rest of this memorandum why the precedent of this court, the Maine Law Court, and the United States Supreme Court compel a ruling this foreclosure action is barred by res judicata and that judgment must be entered for Morneault on his two-count counterclaim for declaratory judgment.

## II.      Summary of the Material Facts.

Under Local Rule 56(b)(2) the parties have filed a stipulated to a joint statement of the material facts ((ECF 60, called the "SSMF") tracing the events since the origination of the Morneault Loan in 2008. This summary of facts is drawn from the SSMF and cited documents.

In 2008, Morneault obtained a $106,000 mortgage loan from First Horizon Home Loans, A Division of First Tennessee Bank N.A., (the "Morneault Loan"), signing a note for that sum[1] and securing it with a mortgage[2] on his home in Bangor, Maine (the "Mortgage"). The Morneault Loan was purchased by Federal National Mortgage Association ("Fannie Mae") about a month after its origination,[3] and JPMorgan Chase Bank National Association (hereafter "Chase") became Fannie Mae's mortgage servicer for the Morneault Loan.[4]

In 2012, acting with the authorization of, and in a representative capacity for Fannie Mae,[5] Chase, commenced a foreclosure action against Morneault on the Morneault Loan in the Bangor District Court (the "2012 Foreclosure Action").[6] In the first paragraph of its complaint, Chase certified that "it is the holder and servicer of the Note and Mortgage described below and that Federal National Mortgage Association is the loan investor and owner of the subject Note."[7] That complaint alleged that Morneault was in default for failing to make his payment due on September 1, 2011, and the payments coming due thereafter[8]. The complaint sought recovery for the entire outstanding balance of the Morneault Loan and a deficiency judgment for any balances remaining due after the foreclosure sale.[9]

The 2012 Foreclosure Action was tried, and the Bangor District Court granted a judgment of foreclosure for Chase on February 2, 2014.[10] Morneault appealed, and in a December 23,

---

[1] SSMF 3 and ECF 17-2, 49 and 49-1
[2] SSMF 4 and ECF 17-3, 49 and 49-1
[3] SSMF 6 and ECF 49 and 49-1
[4] SSMF 15 and ECF 49 and 49-1, ¶ 10
[5] SSMF 27 and 28 and ECF 49-1, ¶ 15
[6] SSMF 17 and Exhibits 1 & 2 to Cox Declaration (ECF 59-1 & 59-2)
[7] SSMF 17 and Exhibit 2 to Cox Declaration (ECF 59-2)
[8] SSMF 17 and Exhibit 2 to Cox Declaration (ECF 59-2)
[9] SSMF 17 and Exhibit 2 to Cox Declaration (ECF 59-2)
[10] SSMF 18 and Exhibits 1 and 3 to Cox Declaration (ECF 59-1 and 59-3)

2014, Memorandum of Decision, [11] the Law Court, finding that the evidence showed the lack of standing of Chase to foreclose, vacated the foreclosure judgment and "remanded for entry of judgement for Morneault." On remand, the Bangor District Court ordered that "judgment is entered for defendant" on January 29, 2015.[12] Fannie Mae received a written assignment of the Mortgage from the originating lender on November 30, 2015.[13] Fannie Mae received copies of both the Law Court's 2014 Memorandum of Decision and the Bangor District Court's 2015 Order of judgment for Morneault.[14]

In 2019, the plaintiff in the 2012 Foreclosure action, Chase, filed a motion under M.R. Civ. P. 60(b), asserting that the 2015 judgment was void due to the Law Court's later decision in *Bank of America, N.A. v. Greenleaf,* 2015 ME 127, 124 A.3d 1122, and seeking an order vacating the judgment for Morneault and dismissing the 2012 Foreclosure Action without prejudice.[15] That motion was denied by the Bangor District Court on August 24, 2021, stating that "the Law Court ordered judgment for the Defendant. The Law Court could have, but did not, order dismissal for lack of standing."[16] No appeal was taken from this denial of the Rule 60(b) motion.[17]

Fannie Mae sold the Morneault Loan to DLJ Mortgage Capital, Inc. on July 29, 2021,[18] and assigned whatever interest it had in the Mortgage to DLJ on October 22, 2021.[19] DLJ commenced this action for foreclosure and other relief on December 4, 2024, alleging in

---

[11] SSMF 19 and Exhibit 4 to Cox Declaration (ECF 59-4)
[12] SSMF 20 and Exhibits 1 and 5 to Cox Declaration (ECF 59-1 and 59-5)
[13] SSMF 9 and ECF 17-6
[14] SSMF 21 and 22 and ECF 49-1, ¶¶ 13 & 14
[15] SSMF 23 and Exhibits 1 and 6 to Cox Declaration (ECF 59-1 and 59-6)
[16] SSMF 24 and Exhibits 1 and 6 to Cox Declaration (ECF 59-1 and 59-6)
[17] SSMF 24 and Exhibit 1 to Cox Declaration (ECF 59-1)
[18] SSMF 10 and ECF 49-1, ¶ 6
[19] SSMF 11 and ECF 17-7

paragraph 31 of its complaint that Morneault was in default for failing to make the payment due on September 1, 2011, and all payments coming due after that.[20] DLJ assigned the Mortgage to the present Plaintiff,[21] and, after an order substituting Plaintiff,[22] the new Plaintiff also alleged at paragraph 32 of its Amended Complaint that Morneault is in default for the payment due on September 1, 2011, and all payments coming due thereafter. [23] This Amended Complaint also sought recovery for the full outstanding balance of the Morneault Loan.

### III.    The 2015 and 2022 judgements of the Bangor District Court in the 2012 foreclosure case are not vulnerable to an attack asserting that they were wrong.

Plaintiff will argue that the decisions of the Bangor District Court in ordering judgment for Morneault in 2015 and in denying that plaintiff's Rule 60(b) motion in 2022 were wrong and that they should not operate as a res judicata to bar this action. The United States Supreme court has disposed of this argument with the following statement of the res judicata standard when this argument is made:

> A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1877). Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. *Angel v. Bullington*, 330 U.S. 183, 187, 67 S.Ct. 657, 659, 91 L.Ed. 832 (1947); *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Wilson's Executor v. Deen*, 121 U.S. 525, 534, 7 S.Ct. 1004, 1007, 30 L.Ed. 980 (1887). As this Court explained in *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325, 47 S.Ct. 600, 604, 71 L.Ed. 1069 (1927), an "erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to

---

[20] ECF 1
[21] SSMF 13 and ECF 17-8
[22] ECF 24
[23] ECF 17

rely upon the plea of *res judicata*.... A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action]." We have observed that "[t]he indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of *res judicata* to avert." *Reed v. Allen*, 286 U.S. 191, 201, 52 S.Ct. 532, 534, 76 L.Ed. 1054 (1932).

*Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398-399, 101 S.Ct. 2424, 69 L.Ed.2d 103. The Supreme Court repeated this standard as recently as 2023 in *Moore v. Harper*, 600 U.S.1, 17, 143 S.Ct. 2065, 216 L.Ed.2d 729 where it quoted its holding from *Moitie* stating "'The res judicata consequences of a final unappealed judgment on the merits' are not 'altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.'"

Here, Plaintiff will argue that the Law Court's 2014 MemDec in the 2012 foreclosure action (ECF 59-1) was wrong in ordering judgment for Morneault. Plaintiff will rely upon the Court's determination that the plaintiff lacked standing and the Law Court's decision issued nine months later in *Bank of America v. Greenleaf*, 2015 ME 127, 124 A.3d 1122, in which the Law Court held that a finding of a plaintiff's lack of standing in a foreclosure case requires dismissal rather than a judgment for the defendant. *Moitie* and *Harper* hold that res judicata bars an attack on that judgment in this new action with a claim that the Law Court decision was wrong due to its later holding in *Greenleaf.*

*Moitie* and *Harper* have double application here, because Chase filed and lost its Rule 60(b) motion (ECF 50-5) arguing that the 2015 *Greenleaf* holding required the Bangor District Court to vacate its judgment for Morneault. Where Chase lost its argument in its Rule 60(b) motion that *Greenleaf* required the court to vacate the 2015 judgment for Morneault, res judicata

bars this plaintiff from making that same argument now. As Justices Blacknum and Marshall pointed out in their concurring opinion in *Moitie,* where the complaining party "made a deliberate tactical decision not to appeal," that party has no basis to claim that some principle of equity should justify an exception to the res judicata doctrine. *Moitie* at 452 U.S. 403. Where no appeal was taken from the Bangor District Court's denial of the Rule 60(b) motion, *Moitie* compels the conclusion that it is not open to this plaintiff to argue that the Bangor District Court's denial of the Rule 60(b) motion was wrong and removes its res judicata bar to this action.

**IV.    Plaintiff's claims are barred by the doctrine of res judicata.**

**A.    The claim preclusion standard applicable to this case.**

This court must give the 2014 Memorandum of Decision of the Law Court, the 2015 order of judgment for Morneault of the Bangor District Court, and the denial of the Rule 60(b) motion in the 2012 Foreclosure Action the same preclusive effect as they would be given by the Maine state courts. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896, 79 L. Ed. 2d 56 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.")

Under Maine law, "[c]laim preclusion bars the relitigation of claims if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Finch v. U.S. Bank, N.A.,* 2024 ME 2, ¶ 22, 307 A.3d 1049, quoting *Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371, 374–75, and Guardianship of Jewel M., 2010 ME 80, ¶ 40, 2 A.3d 301. Maine law does not differ from

federal law on this res judicata standard. *See Haag v. United States*, 589 F.3d 43, 45 (1st Cir. 2009), and *In re Martinez*, 397 B.R. 158, 164 (1st Cir. BAP).

**B.  The same parties or their privies are involved in both actions.**

Fannie Mae owned the Morneault Loan throughout the 2012 Foreclosure Action, including through filing the 2019 Rule 60(b) motion, and authorized Chase to sue on its behalf in a representative capacity. Under similar facts, the 2nd Circuit held Fannie Mae to be in privity with its mortgage servicers where "Fannie Mae owned Dekom's mortgage, first hired BOA and then Nationstar as mortgage loan servicers, and then had them pursue the foreclosure action on its behalf." *Dekom v. Fannie Mae*, 846 F. App'x 14, 20 (2d Cir. 2021). That court stated that parties in privity include "those whose interests are represented by a party to the action." *Id.* Here, the plaintiff and defendant in this action have stipulated that Fannie Mae and its servicers were in privity "throughout the 2012 Foreclosure Action until Fannie Mae sold the Morneault Loan to DLJ Mortgage Capital, Inc. on or about July 29, 2021," and the Declaration of Fannie Mae attached to that stipulation supports that conclusion."[24]

Fannie Mae and its 2021 assignee of the Mortgage (and original plaintiff in this action), DLJ, were also privies regarding these claims. *Howell v. Vito's Trucking*, 386 Mich. 37, 191 N.W.2d 313, 316 (defining a privy as "one who, *after rendition of the judgment*, has

---

[24] *See* Stipulation at paragraph 5, ECF 49, and attached Declaration of Federal National Mortgage Association, ECF 49-1.

acquired an interest in the subject matter" (emphasis added),[25] and "[a] pre-assignment judgment against the assignor binds the assignee because the assignee 'takes subject to all defenses against the assignor ... existing at the time of the assignment.'" *Messingale v. State Farm Mut. Auto. Ins., 2022 WL 3585640, \*5 (6th Cir. 2022)*.

For the same reasons stated in the previous paragraph, DLJ and its assignee, the present Plaintiff, are also privies, and the present Plaintiff took the assignment of the Morneault Mortgages from DLJ subject to the same res judicata defenses applicable to the attempted enforcement of the Morneault Loan that applied to DLJ.

**C.      A valid final judgment was entered in the 2012 Foreclosure Action.**

It is incontestable that the January 29, 2015, judgment for Morneault by the Bangor District Court, as ordered by the December 23, 2014, Memorandum of Decision of the Law Court was a valid final judgment. Chase acknowledged this when it filed its Rule 60(b) motion in 2019, and the Bangor District Court's order denying that motion affirmed this with its statement that "the Law Court ordered judgment for the Defendant. The Law Court could have, but did not, order dismissal for lack of standing." (ECF 59-6).

With no appeal having been taken from that 2021order, it is not now open for Plaintiff to assert that this court should construe the 2015 judgment for Morneault to be something other than the valid final judgment in his favor that it is. This court addressed this issue twice this past

---

[25] *See also Restatement of Judgments 2d, § 43*
      A judgment in an action that determines interests in real or personal property:
            (1)  With respect to the property involved in the action:
                        a.   Conclusively determines the claims of the parties to the action regarding their interests; and
                        b.   Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.

July. On July 22, 2025, when a property owner asked the court to invalidate a state court

judgment of foreclosure, the court held:

> this Court lacks the jurisdiction to invalidate the foreclosure and Fowler would
> need to pursue that kind of relief in state court. *See*, *e.g.*, *Udeogu v.*
> *Intercontinental Capital Group*, No. 23-CV-2738, 2024 WL 3949283, at *1
> (E.D.N.Y. Aug. 27, 2024) (where foreclosure was in state court, recission of the
> related mortgage in federal court would violate the *Rooker-Feldman* doctrine);
> *Scarr v. JPMorgan Chase Bank, N.A.*, No. 1:16-cv-2605, 2018 WL 3195160, at
> *6 (S.D. Ind. Jan. 25, 2018) (same); *Gouveia v. E. Sav. Bank, FSB*, No. 10-cv-
> 277, 2010 WL 11610417, at *5 n.1 (D. Haw. July 31, 2010) (same).

*Douglas v. Birch Point Storage LLC*, No. 2:20-CV-00227-LEW, 2025 WL 2305860, at *1, n.2

(D. Me. July 22, 2025). Just as this court cannot invalidate a state court foreclosure judgment, it

cannot invalidate or change the effect of a defense judgment entered in a foreclosure case which

extinguishes rights to foreclose. Just a week later, the court faced another attack on a state court

judgment and held:

> ( "[t]he *Rooker-Feldman* doctrine prevents the lower federal courts from
> exercising jurisdiction over cases brought by 'state-court losers' challenging
> 'state-court judgments rendered before the district court proceedings
> commenced.' " *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil*
> *Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) and discussing
> *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983);
> *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)). In general, "the
> proper forum for challenging an unlawful state court ruling" is the state appellate
> system followed by a petition for review by the United States Supreme Court.
> *Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps.*, 471 F.3d 220,
> 223 (1st Cir. 2006); 28 U.S.C. § 1257.

*Torre v. Dep't of Health & Hum. Servs.*, No. 2:25-CV-00342-NT, 2025 WL 2169840, at *3 (D.

Me. July 31, 2025). The 2015 judgment for Morneault was a valid final judgment which this

court does not have the jurisdiction to invalidate.

10

**D.    The claims in the Amended Complaint were or might have been litigated in the 2012 Foreclosure action.**

The 2012 Foreclosure Action sought, and in this case, Plaintiff also seeks, a foreclosure of the Mortgage granted by Morneault in 2006 to First Horizon Home Loans. Both cases assert that Morneault was in default for the payment due on September 1, 2011, and all payments coming due after that. The complaints in both cases assert that the court should grant judgments for the entire outstanding balance due on the Morneault Loan. The Amended Complaint here asserts four causes of action: Count I for foreclosure, Count II for breach of the note secured by the Mortgage, Count III for breach of the contract created by the Note and Mortgage, and Count IV for unjust enrichment. The foreclosure cause of action stated in Count I of the original complaint and the Amended Complaint in this case was asserted in the 2012 Foreclosure Action and is barred by res judicata. *Finch* at 2024 ME 2, ¶ 22. The assertion in this action of the three additional causes of action stated in Counts II-IV of the complaints does not overcome the bar of res judicata to the prosecution of this action.

The causes of action stated in Counts II-IV are claims which could have been asserted in the 2012 Foreclosure Action. This is determined by "a 'transactional test' which involves 'examining the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong.'" *Wilmington Trust, National Association v. Howe*, No. 2:21-cv-00278-NT (ECF 88), 2024 WL 5158825 at •7, citing *Portland Water Dist.*, 2008 ME 23, ¶ 8, 940 A.2d 1097 (quoting *Norton v. Town of Long Island*, 2005 ME 109, ¶ 18, 883 A.2d 889). Both the 2012 Foreclosure Action and this action involve the same note and mortgage and the same default—the "same nucleus of facts." Both complaints seek redress for essentially "the same basic wrong" --Morneault's failure

11

to pay the monthly installments due on September 1, 2011, and coming due after that. In *Howe*, Judge Torresen went on to state that "[a] later claim 'is precluded even if the second action 'relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case.' " *Howe, 2024 WL 5158825 at *7*

> **E.    The claim preclusion test is easily met in this case.**

This second foreclosure action against Morneault meets the claim preclusion test set out in *Finch at ¶ 22*: (1) Morneault is the defendant in both cases, and the plaintiffs in the two cases are in privity; (2) a valid final judgement, ordered by the Law Court, was entered by the Bangor District Court in the 2012 Foreclosure Action; and (3) the first of the four causes of action (foreclosure) stated in the Amended Complaint (ECF 17) was litigated in the 2012 Foreclosure action, and the other three counts of the Amended Complaint are founded "upon the same nucleus of operative facts and seek redress for "the same basic wrong." The holding of the Law Court in 2024 in *Finch* has no application to the 2015 judgment for Morneault in the 2012 Foreclosure Action.

## V.    The holding of *Finch* has no application to this case.

> **A.    The *Finch* holding is limited to cases involving default letter issues, and the judgment in the 2012 Foreclosure Action does not involve such issues.**

The Amended Complaint (ECF 17) and the default letter (ECF 17-9) suggest that counsel for Plaintiff and its predecessor, DLJ, may believe that the 2024 holdings of the Law Court in *Finch v. U.S. Bank, N.A., 2024 ME 2, 307 A.3d 1049* (and *J.P. Morgan Mort. Acq. Corp. v. Moulton, 2024 ME 13, 314 A.2d 134*), rendered inapplicable to this action the res judicata principles discussed above. This is a misunderstanding the limited scope of those decisions.

Critical to any understanding of the limited scope of the *Finch* ruling and why it has no application to this case is an understanding of when a foreclosure action accelerates the outstanding balances on an installment note such as the traditional 30-year mortgage note evidencing the debt owed on the Morneault Loan. In the complaint in the 2012 Foreclosure Action (ECF 59-2), Chase itemized in paragraph 10 the outstanding principal balance due on that note of $102,797.26, and the amounts of all accrued interest, late charges, inspection fees, and escrow advances that had accrued on that note, asserting that all those sums were due as of the date of that complaint. In paragraph D of the prayers for relief in that 2012 complaint, Chase demanded a judgment that Morneault would be liable for any deficiency balance remaining after the foreclosure sale of his property. In this action, the plaintiff alleges in paragraph 32 of the Amended Complaint (ECF 17) precisely the same default, setting forth in paragraph 26 a listing of the amounts claimed to be then due starting with the same principal balance then owed of $102,797.26 and listing the amounts of all accrued interest, late charges, inspection fees, and escrow advances that had accrued on that note. In paragraph (p) of the prayers for relief in the Amended Complaint, this plaintiff demands judgment for "the total debt owned under the Note plus interest and costs…"

Just as with the first foreclosure action discussed in *Johnson v. Samson Construction Corp.,* 1997 ME 220, §8, 704 A.2d 866, the complaint in the 2012 Foreclosure Action against Morneault "was an action for the accelerated debt," and that meant that "the entire debt became due" and that any obligation to pay future monthly installments "merged into one obligation to pay the entire balance on the note." *Id.* The first foreclosure action in *Johnson,* was dismissed with prejudice when Johnson violated a court order. The Law Court held that was "an adjudication on the merits" which barred, on res judicata grounds, that plaintiff's complaint in a

13

second foreclosure action which "alledg[ed] precisely what the complaint in the first action alleged." *Id.*

Seeking to overturn *Johnson v. Samson* in 2017, Fannie Mae, as owner of the loan in *Federal National Mortgage Association v. Deschaine*, 2017 ME 190, 170, A.3d 230, appealed a judgment for the borrower in a second foreclosure action by Fannie Mae after its first foreclosure action was dismissed with prejudice due to its failure to follow a court order. In rejecting the attack by Fannie Mae on *Johnson v. Samson Construction,* the unanimous Law Court in *Deschaine* held:

> In sum, based on the application of the principles articulated in *Johnson* to the undisputed facts of this case, Fannie Mae's 2013 foreclosure complaint is barred by the judgment dismissing with prejudice its 2011 complaint. The court therefore did not err by granting the Deschaines' motion for summary judgment on Fannie Mae's [second] foreclosure complaint. Additionally, because Fannie Mae is precluded from seeking to recover the underlying debt on the note, the court did not err by concluding, based on 14 M.R.S. § 6206, that the Deschaines were, as a matter of law, entitled to a judgment declaring that they hold title to the Lincoln property unencumbered by the mortgage in favor of Fannie Mae.

*Id.* at ¶ 37.

Later in 2017, the Law Court was confronted another attack on *Johnson v. Samson Construction* in *Pushard v. Bank of America, N.A.*, 2017 ME 230, 175 A.3d 103. There, Bank of America had lost its first foreclosure case, suffering the entry of a judgment for Pushard due to the court's determination that its default letter did not meet the requirements of 14 M.R.S. § 6111. *Id.* at ¶ 4. Pushard then brought a declaratory judgment action seeking a ruling that Bank of America's loss in the foreclosure action entitled Pushard to a declaratory judgment removing the mortgage as a lien since, on res judicata principles, it had become unenforceable. The trial court granted summary judgment to Bank of America on that claim, but on Pushard's appeal, the

14

Law Court reversed. *Id.* at § 36.  Relying on its analysis in *Deschaine*, the unanimous Law Court rejected Bank of America's attack on *Johnson v. Samson. Id.* at § 22.

In *Pushard,* the Law Court had rejected the bank's assertion that the language of 14 M.R.S. § 6111 regarding default letters prevented the acceleration of an installment mortgage note unless a default letter meeting the requirements of § 6111 was sent before commencement of the foreclosure action. *Id.* at ¶¶ 23 & 27.  However, in 2024 the Law Court reversed its position, stating:

> Having weighed all of these considerations against those of stare decisis, we now overrule *Pushard* to the extent that it holds that the acceleration of a note balance can occur without the lender having proved that it has complied with the statutory and contractual requirements to accelerate. When a court finds that a lender's notice of default, acceleration, and right to cure fails to comply with section 6111, the court should treat the lender's foreclosure claim as prematurely commenced, without proceeding further unless the lender has asserted a justiciable claim under the note for the unaccelerated balance due. The court should ordinarily also consider awarding attorney fees to the borrower pursuant to the applicable statute. *See* 14 M.R.S. § 6101 (2023). In appropriate cases, the court should also consider imposing sanctions and other relief available under the foreclosure statutes or its inherent authority, including dismissal with prejudice if it is appropriate. *See* 14 M.R.S. § 6113(3) (authorizing the imposition of sanctions during a foreclosure action for a lender's or mortgage servicer's violation of its duty of good faith).

*Finch v. U.S. Bank, N.A.*, 2024 ME 2, ¶ 51, 307 A.3d 1049, 1068–69. *Finch* did not nullify the application of res judicata principles to foreclosure cases. Nor did it overrule the holdings of *Johnson* and *Deschaine* that, when mortgage loan is accelerated and the bank loses, any second foreclosure action will be barred by res judicata. What *Finch* did do was hold that there can be no valid acceleration on a mortgage loan note unless the default letter meets the requirements of 14 M.R.S. § 6111. Neither of the defense judgments in the first foreclosure actions in the *Johnson* or *Deschaine* matters was based on defective default letters--there were no issues in either of those cases regarding the adequacy of the default letters.

The *Finch* decision was followed within weeks by the Law Court's decision in *J.P. Morgan Chase Acquisition Corp. v. Moulton*, 2024 ME 13, 314 A.3d 134, another case where judgment was entered against the mortgagee due to its reliance on a default letter not meeting the requirements of 14 M.R.S. § 6111. The Law Court followed its holding in *Finch* and reversed the trial court declaratory judgment for Moulton ordering the removal of the mortgage as a lien on Moulton's property. *Id.* at ¶ 15. Nothing in *Moulton* expanded the scope of the holding in *Finch,* which was limited to barring acceleration of mortgage loans where there was not full compliance with the default letter requirements of § 6111.

The principle holding of *Finch* was to overrule *Pushard* and rule that accelerations of mortgage notes cannot occur when default letters are defective. *Finch* did not overrule the *Johnson* and *Deschaine* res judicata rulings for those homeowners where there were no issues about the default letters. Nothing in *Finch* (or *Moulton*) changed the application of res judicata principles to defense judgments in foreclosure case where the accelerations of the loans were not barred by § 6111. Since the 2012 Foreclosure Action against Moulton had no default letter issues, the holding of *Finch* did not change the precedent of *Johnson* and *Deschaine* which, applied to this case, compel a holding that this 2024 foreclosure action is barred by res judicata.

**B.**    **The 2024 holding of *Finch* cannot affect the finality of the 2015 judgment for Moulton in the 2012 Foreclosure Action.**

Even if the 2012 Foreclosure Action had involved a default letter issue, *Finch* could not be retroactively applied to now allow a second foreclosure action filed nine years after a defense judgment in an earlier foreclosure action. This court recently held that the 2024 *Finch* holding cannot be applied to cases where judgments in foreclosure cases for homeowners were granted years earlier. In *Fuller v. WVMF Funding, LLC*, No. 1:21-CV-00290-SDN, 2024 WL 5159141, at *10 (D. Me. Dec. 18, 2024), a defense judgment had been entered in favor of Fuller in 2021in

a foreclosure trial by the Augusta District Court, and she then filed in this court a complaint seeking the same declaratory judgment relief affirmed by the Law Court in *Deschaine* at ¶ 37. In ruling on Fuller's motion for summary judgment, this court held:

> The law at the time of the … District Court's entry of judgment for Plaintiffs and at the time Plaintiffs brought this suit was crystal clear: their mortgage automatically became unenforceable and no longer encumbered their property. *See Pushard*, 2017 ME 230, ¶ 36, 175 A.3d 103; *Deschaine*, 2017 ME 190, ¶ 37, 170 A.3d 230. Although the law has since changed, this Court does not apply *Finch* retroactively because Plaintiffs and those similarly situated reasonably relied on the Law Court's pronouncements in *Deschaine* and *Pushard*. Plaintiffs are entitled to judgment as a matter of law…

*Id.* Judge Neuman's reasoning supporting her decision in *Fuller* is compelling and Morneault urges the court to consider that her reasoning is even more compelling in his case where there has been the passage of more than 10 years between the Law Court's Memorandum of Decision ruling in his favor and the commencement of this action. Morneault acknowledges that the decision in *Fuller* is now on appeal to the 1st Circuit.

**VI.     Summary--Morneault is entitled to summary judgment on Plaintiff's claims and on his Counterclaims.**

Plaintiff is not permitted to challenge, in this action, the correctness of the judgment for Morneault entered in the 2012 foreclosure action. The claim preclusion branch of res judicata compels the entry of summary judgment in favor of Morneault on all four counts of the Amended Complaint and Count I of Morneault's Amended Counterclaim. Likewise, under the holding of *Deschaine,* summary judgment should be entered on Count II of his Amended Counterclaim in the form of an order removing the lien of the Mortgage as an encumbrance upon Morneault's Bangor home. Even though the issue raised in Section V.B above is on appeal to the 1st Circuit, there is no reason for the court to delay ruling on the res judicata issue raised in

Section III above as the court's ruling in favor of Morneault on that issue will obviate the need for the court to reach the issue raised in Section V.

DATED: December 26, 2025

/s/Thomas A. Cox, Esq.
Thomas A. Cox, Esq. Me. Bar No. 1248
*Attorney for Defendant and Counterclaim
Plaintiff Kevin Morneault*

P.O. Box 1083
Yarmouth, ME 04096
(207) 749-6671

18