UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| 1900 CAPITAL TRUST II, BY US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 1:24-cv-00416-LEW |
| KEVIN M. MORNEAULT, | ) | |
| Defendant | ) | |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

In this action, the Plaintiff Trust (see caption) seeks to foreclose on a mortgage. The Defendant, Kevin Morneault, opposes the Trust's claims and advances his own counterclaims seeking declarations that would serve to negate the promissory note and mortgage deed that give rise to the Trust's claim for foreclosure. The matter is before the Court on cross-motions for summary judgment on all claims and counterclaims. For reasons that follow, summary judgment is granted in favor of the Trust on Defendant's counterclaims. The motions are otherwise denied.

**BACKGROUND**

Kevin Morneault acquired a residential property located at 412 Essex Street in Bangor on December 21, 2005. Stipulated Statement of Material Facts ("Stip.") ¶ 1 (ECF No. 60). On January 24, 2008, Morneault used the property as collateral to secure a

mortgage loan for $106,000 from First Horizon Home Loans. He signed a promissory note for that sum along with a mortgage deed to the Essex Street property. *Id.* ¶¶ 2-4. The Federal National Mortgage Association (Fannie Mae) purchased the mortgage loan from First Horizon's parent company about a month later. *Id.* ¶¶ 5-6.

In 2012, JPMorgan Chase Bank ("Chase"), as the loan servicer, initiated a foreclosure action against Morneault in the Bangor District Court. Chase alleged that Morneault was in default on the note for his "payment due September 1, 2011, and all payments coming due thereafter." *Id.* ¶ 17. Following a trial, the Bangor District Court ordered a judgment of foreclosure in favor of Chase. *Id.* ¶ 18. On appeal, however, the Maine Supreme Judicial Court ("Law Court"), relying on its then recent opinion, now known as *Greenleaf I*, vacated the judgment for Chase based on its determination that Chase had not proven a valid assignment or conveyance of the mortgagee.[1] *JPMorgan Chase Bank*, *N.A. v. Morneault*, Mem. 14-171 (Dec. 23, 2014) (ECF No. 51-1). The Law Court explained that Chase had failed to prove it was the party with standing to foreclose and remanded the case with instructions that the District Court enter judgment for Morneault. *Id.* ("Pursuant to our holding in [*Greenleaf I*], Morneault is entitled to judgment because the evidence establishes as a matter of law that JPM lacked standing to foreclose

[1] *Bank of Am.*, *N.A. v. Greenleaf*, 96 A.3d 700 (Me. 2014) ("*Greenleaf I*") (holding that the Mortgage Electronic Registration Systems ("MERS"), as a mere nominee of the lender and the lender's successors, is not itself a mortgagee and therefore lacks sufficient interest in a mortgage deed to convey it to successors on the related note and vacating judgment of foreclosure without ordering entry of judgment for mortgagor on remand).

on the mortgaged premises.”). The Bangor District Court entered judgment for Morneault in January 2015, as instructed.[2] Stip. ¶ 20.

In September 2015, after the Bangor District Court’s entry of judgment for Morneault, the Law Court issued another *Greenleaf* opinion (“*Greenleaf II*”) in which it observed that a determination that a plaintiff lacks standing to foreclose should result in a dismissal without prejudice.[3]

In 2019, Chase filed a motion for relief from the judgment entered in favor of Morneault under Maine Rule of Civil Procedure 60(b), pointing to *Greenleaf II* and other Law Court opinions establishing that dismissal without prejudice is the appropriate outcome when a plaintiff lacks standing. Cox Aff. Ex. 6 (ECF No. 59-6). On August 24, 2021, the Bangor District Court denied that motion, reasoning that “[t]he Law Court could have, but did not, order dismissal for lack of standing”—instead, the Law Court ordered “entry of Judgment for the Defendant.” *Id.*; Stip. ¶ 23. Chase did not appeal. Stip. ¶ 24.

Fast forward to 2024. DLJ Mortgage Capital, Inc., then purporting to be the mortgagee and holder of the Morneault note, filed this action in December 2024. *Id.* ¶¶ 10-13. Shortly thereafter, in April 2025, the current Plaintiff Trust substituted in by order of the court (ECF No. 24). The operative complaint contains four counts: *in rem*

[2] To remedy the standing issue on which Morneault prevailed before the Law Court, First Horizon Home Loans assigned its interest in the mortgage to Fannie Mae by quitclaim assignment on November 30, 2015. SSMF ¶ 9.

[3] *Bank of Am*., *N.A. v. Greenleaf*, 124 A.3d 1122, 1125 (Me. 2015) (“*Greenleaf II*”) (“Here, the court could not have entered a judgment on remand addressing the merits of the Bank's foreclosure claim because the Bank failed to show [standing,] the minimum interest that is a predicate to bringing that claim in the first place. Under these circumstances, the court properly disposed of the case by entering a dismissal without prejudice.”).

foreclosure and sale, breach of the note, breach of contract, and unjust enrichment. *See* Am. Compl. ¶¶ 28-67 (ECF No. 17). In his Second Amended Counterclaim (ECF No. 51), Morneault seeks declaratory judgment that the judgment in the first foreclosure action bars any subsequent action by Fannie Mae, DLJ, or the Trust (or their successors) to foreclose on the mortgage or assert any other claim that might have been asserted in the first foreclosure action—including the claims the Trust brings here. Morneault also seeks a declaration that the note and mortgage securing the loan are unenforceable and that he holds title to the Essex Street property free and clear. *Id*. p. 7.

To better understand why Morneault believes that the Maine District Court's judgment based on a lack of standing is preclusive of this case and any future case requires a background bridge. As discussed above, *Greenleaf II* establishes the proper disposition when the foreclosing party fails to prove its standing. Separately, another line of precedent involves foreclosure actions in which the foreclosing party has standing but fails to prove either the mortgagor's default or its own compliance with the strict requirements of the Maine foreclosure statute, and, meanwhile, asserts in its pleadings that the mortgagor's alleged default accelerated the entire balance of the promissory note. *See generally, Pushard v. Bank of America, N.A.*, 175 A.3d 103 (Me. 2017); *Fed. Nat'l Mortg. Ass'n v. Deschaine*, 170 A.3d 230, 242 (Me. 2017). This particular line of precedent, now overruled, might be characterized as the Law Court's former mortgage lottery program.

In 2017, the Law Court held in its *Pushard* opinion that a failure of proof in a foreclosure action on an accelerated note means that the foreclosing party "no longer has any enforceable interest in the note or the property set up as security for the note" and is

"precluded from seeking to recover on the note or enforce the mortgage" in the future. 175 A.3d at 116.[4] Based on *Pushard*, mortgagors who successfully defended against the merits of a foreclosure action seeking to collect on an accelerated promissory note were entitled to judgment with preclusive effect against any future foreclosure action, effectively entitling them to a judicial decree or declaration that their real estate was no longer subject to the mortgage encumbrance. *See Pushard*, 175 A.3d at 115-116.

In January 2024, the Law Court overturned *Pushard* and announced the rule that now governs: "when a lender fails to prove in a foreclosure action that it has issued a valid notice of acceleration or fails to prove that the borrower has breached the parties' contract, the parties are returned to the positions they occupied before the filing of the action (except as to any claim for an unaccelerated amount due that could have been litigated)." *Finch v. U.S. Bank, N.A.*, 307 A.3d 1049, 1065 (Me. 2024). In effect, the preclusive impact of a mortgagee's loss in a foreclosure case on an accelerated note is limited to the unaccelerated portion of the alleged default and related fees and expenses of foreclosure and lacks any title implications. *J.P. Morgan Mortg. Acquisition Corp. v. Moulton*, 314 A.3d 134, 137-38 (Me. 2024). With *Finch* and *Moulton*, defaulting on a

[4] *See also Deschaine*, 170 A.3d at 242; *Johnson v. Samson Constr. Corp.*, 704 A.2d 866, 868-69 (Me. 1997). The rationale here was that if an acceleration clause is in play, then the foreclosure action is "an action for the accelerated debt," and any subsequent foreclosure action "alleges 'precisely what the complaint in the first action alleged:' that the mortgagor defaulted on the note and the mortgagee is entitled to a judgment on the amount due under the note." *Fuller v. WVMF Funding, LLC*, No. 1:21-cv-00290-SDN, 2024 WL 5159141, at *5 (D. Me. Dec. 18, 2024) (quoting *Johnson*, 704 A.2d at 868). The specific failure of proof that prevented foreclosure in *Pushard* was a defect in the notice of the mortgagor's right to cure. This notice, which must comply with strict statutory requirements, is a prerequisite to acceleration in residential foreclosure cases, s*ee* 14 M.R.S. § 6111(1), making the conclusion the Law Court reached in *Pushard*—that the foreclosure action accelerated the debt, both because of and despite the defective notice—something of an oddity.

promissory note backed by a mortgage deed no longer enters a mortgagor in a housing lottery and a mortgagee is entitled to foreclose based on new defaults.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if it can 'be resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Feliciano-Munoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (internal citations omitted). In reviewing a motion for summary judgment, I review the record in the light most favorable to the nonmoving party, who is entitled to the benefit of all reasonable inferences that can be drawn therefrom. *Id*. When "ruling simultaneously on cross-motions for summary judgment, [the Court] must view each motion, separately, through this prism," *Estate of Hevia v. Portrio Corp*., 602 F.3d 34, 40 (1st Cir. 2010), and decide "whether either of the parties deserves judgment as a matter of law on facts that are not disputed," *Dahua Tech. USA Inc. v. Feng Zhang*, 988 F.3d 531, 539 (1st Cir. 2021) (cleaned up).

### A. Morneault's Motion for Summary Judgment

I begin with Morneault's request for summary judgment in favor of his counterclaims, which, if granted, would bar the Trust's claims. Morneault contends that the outcome of the first attempt to foreclose on the Essex Street property precludes the current foreclosure action. Federal courts "give to a state-court judgment the same preclusive effect as would be given to that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75,

81 (1984). The question before me, therefore, is what preclusive effect a Maine court would assign to the judgment in the first foreclosure action considering that it was entered based on a lack of standing.

Under Maine law, "[c]laim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been[,] litigated in the first action." *Finch*, 307 A.3d at 1058 (quoting *Machias Sav. Bank v. Ramsdell*, 689 A.2d 595, 599 (Me. 1997)). On its face, this generic recitation of the standard for claim preclusion would appear to favor Morneault. Adding some additional sheen to his position is the fact that Chase (the Trust's predecessor) sought relief from the Maine District Court judgment, effectively asking the Court to convert its judgment into a dismissal without prejudice and then, after being denied that relief, neglected to file an appeal. Also providing Morneault with some moral support is the fact that, in 2021, when Chase sought relief from the Maine District Court's judgment, the *Pushard* lottery was in full swing, albeit only in those cases in which the mortgagor had standing to foreclose.

But despite these arguable advantages, Morneault's claim preclusion quest is ultimately misguided because the preclusive impact of a judicial disposition is not determined by the label placed on the order (*i.e.*, "judgment" or "dismissal") but by the substance of the decision itself. It is for this reason that the third prong of the claim preclusion standard asks "whether the issues presented [here] 'were, or might have been, litigated'" in the first foreclosure. *Wilmington Trust Co. v. Sullivan-Thorne*, 81 A.3d 371, 375 (Me. 2013). To determine whether the matters presented for decision here "were or

might have been litigated in the prior action," Maine courts ask "whether the same cause of action was before the court in the prior case." *Id*. (internal citation omitted). The answer to the question is clearly "No," because when a case is ejected from a court based on the plaintiff's lack of standing, the court's jurisdiction to resolve the putative dispute never attaches. In fact, nothing is litigated nor could anything be litigated in such circumstances. *See Greenleaf II*, 124 A.3d at 1125 ("Standing is a condition of justiciability that a plaintiff must satisfy in order to invoke the court's subject matter jurisdiction in the first place. . . . A plaintiff's lack of standing renders that plaintiff's complaint nonjusticiable—*i.e.*, *incapable of judicial resolution*." (emphasis added)).[5]

For this reason, Morneault's position places far too much weight on the fact that the Law Court directed the entry of judgment in 2014—but not entry of judgment "on the merits." The Law Court determined in the first foreclosure action that Chase did not have standing to foreclose, meaning that Chase was not entitled to bring the suit and nothing could be determined by the Maine District Court beyond that threshold question. Ultimately, nothing was or could have been determined in the prior foreclosure case by the District Court or the Law Court in regard to the merits of the earlier foreclosure action. *Nichols v. City of Rockland*, 324 A.2d 295, 296 (Me. 1974) ("Only one who has standing to bring suit may present a properly justiciable controversy to this Court for resolution.").

---

[5] *Cf. Finch*, 307 A.3d at 1062 n.10 ("As the United States Supreme Court has observed, the "premise that all judgments denominated 'on the merits' are entitled to claim-preclusive effect . . . is not necessarily valid." (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501 (2001)) & 1061 ("[A] judgment based on the plaintiff's failure to comply with a precondition to the commencement of the action is not given preclusive effect because a plaintiff's claim cannot be litigated if the plaintiff is not entitled to bring the suit." (citing Restatement (Second) of Judgments § 20(2) (Am. L. Inst. 1982))).

Consequently, the prior judgment cannot serve as a bar to the foreclosure case now before this Court. Although Morneault also argues that the prior case involved a purportedly accelerated promissory note, and that that fact should make a difference here, I am not persuaded that the mere pleadings of a party found to be without standing were ever sufficient on their own to set the *Pushard* roulette wheel in motion, particularly in light of *Greenleaf II*. *Pushard*, 175 A.3d at 111-12. Morneault's Motion for Summary Judgment (ECF No. 64) is therefore denied.

## B. The Trust's Motion for Summary Judgment

The Trust has also moved for summary judgment on its claims, seeking a summary judgment in its favor on the counterclaims as well as its foreclosure and note counts, to be followed by a damages hearing. Pl. Mot. for Summary J (ECF No. 67). For the reasons outlined above, the Trust is entitled to the entry of a summary judgment that disposes of Morneault's counterclaims.

As for the Trust's own claims, the Trust says that "Morneault does not dispute the existence of the Note or Mortgage, his default in payment, or the Trust's Notice of Default/Right to Cure." Mot. Mem. at 8 (ECF No. 67-1). The Trust argues that the summary judgment record it has put before the Court establishes that its right to foreclose and collect is beyond dispute. *Id.* at 10-12. The Trust's Motion Memorandum offers little more, observing in summary fashion, "Simply put, the *Higgins* elements required to support a Foreclosure and Sale to extinguish Morneault's Right of Redemption have been established as a matter of [l]aw [but] [a] hearing on damages is needed because the amount due under the Note and Mortgage [is] disputed." *Id.* at 12 (itemizing in footnote 11 the

eight requirements to foreclose set out in *Chase Home Fin. LLC v. Higgins*, 985 A.2d 508, 510-11 (Me. 2009)).

A review of *Chase Homes* reveals that the Law Court vacated a foreclosure judgment entered for Chase Homes on a summary judgment motion because “the summary judgment record [did] not establish the amount that the Higginses owe[d] on the mortgage note.” *Higgins*, 985 A.2d at 512. Here, the Trust has itself pointed out that there is a genuine issue of material fact concerning the amount owed and that it does not seek a judgment on the amount owed. Mot. Mem. at 12. That alone is sufficient cause to deny the Trust’s request for summary judgment. But in addition, given the record at summary judgment, I would also prefer to make findings as to possession of the note and the sufficiency of the notice based on a trial record.

For example, to the extent the Trust relies on the Affidavit of Charisse McKnight (ECF No. 65), Ms. McKnight avers that the notice of default and right to cure letter are “kept in the ordinary course of business by Plaintiff” rather than by her own employer, a loan servicing company. Additionally, it is unclear what connection she or her employer has to the once lost and now found note, since the correspondence exhibits do not suggest that her employer was involved in losing the note, discovering the note, possessing the note, or integrating it into her employer’s system of business records after its discovery. Moreover, the Trust, in its Reply, seeks to overcome Morneault’s challenge by pointing to documentation of the note attached to its Amended Complaint. Reply at 2 (ECF No. 75) (citing ECF No. 17-2). But the Amended Complaint is not verified and the exhibits attached to it were not accompanied by any affidavit swearing to their authenticity.

Because the Amended Complaint and its exhibits lack evidentiary quality, I am not willing to rely on them for summary judgment purposes.

Morneault also denies the Trust's statement that its notice of default and right to cure letter strictly complied with the requirements of 14 M.R.S. § 6111. Def. Opp'n at 6-7. More specifically, the partes stipulated that the Maine District Court entered judgment after the remand from the Law Court, by order dated January 29, 2015. Stip. ¶ 20. The parties also appear to agree in principle that Morneault's liability should correspond with amounts coming due in the wake of that litigation. Morneault observes that the notice of default and right to cure sent out in this case includes as part of the amount due a payment installment for January 1, 2015. Notice at 2 (ECF No. 65-2). Defects in a notice of right to cure are cause for dismissal when it comes to residential mortgages because of the strict compliance regime that applies under 14 M.R.S. § 6111. *Finch*, 307 A.3d at 1068 (citing *Greenleaf I*, 96 A.3d at 708).

I am not persuaded by Morneault's assertion that the notice of default and right to cure letter was legally insufficient merely because of its inclusion of the January 2015 installment. The Maine District Court's judgment, having entered based on a finding of lack of standing, had no preclusive force and therefore would not bar the Trust from collecting even as to amounts at issue in the years that the case remained pending in state court. Thus, the amount stated in the notice appears to be, if anything, an understatement rather than an overstatement of the amount Morneault needed to pay to cure his default. Although an understatement is by definition inexact, the notice nonetheless informed Morneault of the sum certain that the Trust required to cure his default; there were no

hidden or undisclosed sums that left Morneault unaware of what he needed to pay for purposes of loan reinstatement. Because the notice specified the sum certain needed to cure the default, without overstating the amount due or referencing without itemizing other sums that the notice expressly required him to pay, the notice complied with Maine law. *See JPMorgan Chase Bank, N.A. v. Lowell*, 156 A.3d 727, 734 (Me. 2017) (observing that a notice must "specify the sum certain required to cure the default" and vacating foreclosure judgment where notice stated that cure required payment of escrow fees that were not itemized and was otherwise opaque concerning the need for payment of certain advances itemized in the notice); *Wilmington Sav. Fund Soc'y, FSB as Tr. for Brougham Fund I Tr. v. Cortellino*, --- A.3d ---, 2026 WL 1493103, at * 3 (Me. May 28, 2026) ("When a right-to-cure notice overstates the amount required to cure the default, the notice does not strictly comply with section 6111 and is therefore deficient."); *U.S. Bank Tr., N.A. for LSF9 Master Participation Tr. v. Jones*, 330 F. Supp. 3d 530, 537 (D. Me. 2018), *aff'd sub nom. U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Jones*, 925 F.3d 534 (1st Cir. 2019) ("The Maine Legislature could hardly have intended to force lenders to send notices itemizing the amounts for the borrower's right to cure to the borrower while also allowing lenders to foreclose even if those amounts are inaccurately inflated."); *Wilmington Tr., N.A. v. Severance*, Mem. Dec. 25-27, 2025 WL 521817, at *1 (Me. Feb. 18, 2025) ("[T]he court correctly reasoned that a section 6111 notice that states a cure amount less than the amount actually due is not defective, whereas a notice that overstates the amount then due would be.").

## CONCLUSION

Plaintiff's Motion for Summary Judgment (ECF No. 67) is GRANTED IN PART and DENIED IN PART. Defendant's Motion for Summary Judgment (ECF No. 64) is DENIED. Judgment will enter for Plaintiff on Defendant's Counterclaims.

SO ORDERED.

Dated this 27th day of August, 2026.

/S/ Lance E. Walker
Chief U.S. District Judge